# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-3871 / 01-3963

_____

Allen L. Beach,                                         *
                                                        *
    Plaintiff-Appellee / Cross-Appellant,       *    Appeals from the United
                                                        *    States District Court for
v.                                                      *    the District of
                                                        *    Minnesota.
Yellow Freight System, sued as                          *
Yellow Freight System, Inc.,                            *
                                                        *
    Defendant-Appellant / Cross-Appellee.       *

_____

Submitted: October 9, 2002
Filed: November 29, 2002

_____

Before MURPHY, BEAM, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

    Yellow Freight System, Inc. (Yellow Freight) appeals from the judgment entered in favor of Allen Beach after a bench trial on his claims of same sex sexual harassment under the Minnesota Human Rights Act (MHRA), Minn. Stat. Chapter 363. Yellow Freight argues there was insufficient evidence to establish a severe and pervasive hostile work environment and that it was entitled to judgment as a matter of law. Beach cross appeals, challenging a particular finding of the district court[1] and its impact on his amount of damages. We affirm.

_____

[1] The Honorable Jonathan Lebedoff, United States Magistrate Judge for the District of Minnesota, presiding.

## I.

Yellow Freight is a trucking company engaged in freight transportation. Its distribution center in Burnsville, Minnesota employs approximately 500 workers, and Allen Beach started working there in 1986.

In June of 1995, Beach began seeing graffiti with his name written on the walls of Yellow Freight trailers. During 1995 he saw the phrases "Al Beach sucks," "Al Beach sucks cock," and "Al Beach is gay." He did not report the graffiti at first because it made him feel humiliated and embarrassed, but after several months of seeing it, Beach reported it to City Operations Manager Thomas L. Cover, his supervisor. Beach told Cover that he was tired of the graffiti and wanted it to stop. Cover agreed and told Beach he would investigate. Cover inspected the trailer Beach was using at that time, had the graffiti in it removed, and switched the freight to another trailer. He also talked with General Operations Manager Paul Trautwein about the incident, but no further action was taken by Cover or Trautwein.

Beach continued to see graffiti on trailers throughout the rest of 1995 and 1996. Sometime in 1995 after Beach had first reported the graffiti to Cover, Beach and a coworker made a list of trailers containing graffiti and provided all the trailer numbers to Cover. Cover did nothing to investigate the graffiti or to direct anyone else to investigate it. In 1996 Beach took 20 to 30 photos of graffiti reading "Al Beach Sucks," "Al Beach is gay," and "Fuck you, Al Beach." He gave the photos to Trautwein and told him the name of a coworker who he suspected might be responsible. Trautwein gave the photos to his supervisor, Distribution Center Manager Jeff Harvey, but he did not pass on Beach's suspicions about his coworker. There is no evidence that Trautwein or Harvey took any particular action at this time. Although Trautwein removed graffiti he had personally seen, he did not report a complaint of sexual harassment to the human resources department. When the graffiti persisted, Beach contacted Harvey directly and requested that he investigate the source. There is no evidence that Harvey took any action in response.

The graffiti meanwhile proliferated and began appearing in more trailers, on forklifts, in stairwells, and in the bathrooms of the Burnsville terminal. The graffiti became more offensive, including phrases such as "Al Beach fucks his mother in the ass" and "give Al Beach a buck and he'll fuck you in the butt." Customers and other Yellow Freight employees began to ask Beach about the graffiti, and eventually it could be found on seventy percent of Yellow Freight trailers. Beach testified that he felt sick, degraded, and demeaned by the graffiti. He had trouble getting out of bed in the morning and found it difficult to go to work. He began using the manager bathroom to avoid seeing graffiti about himself in the employee rest room.

From 1996 through approximately March 2000, Beach reported graffiti to numerous other supervisors. He complained about the graffiti to Steven Rhodus, a Shift Operations Manager, but Rhodus told him not to "get on to" him because he had just started his job. In July 1998, Beach discussed the "writing on the walls" with Regional Manager Patrick Heaney. In late 1998 or early 1999, Beach told Rhodus he wanted to talk to someone at Yellow Freight headquarters in Kansas. Beach left a message at headquarters, but no one returned his call.

Several other employees reported seeing graffiti about Beach throughout the late 1980s and the 1990s, but they were not sure whether Beach had seen it all himself. Yellow Freight employee David Jones saw graffiti about Beach in early 1999, including "Al Beach sucks," "Give Al Beach a buck, and he'll fuck you in the butt," "Al Beach sucks giant cocks, sign [sic] Al," and "Al Beach sucks giant Teamster cocks, sign [sic] Al, someone with a cock." Jones took pictures of the graffiti for his own successful sexual harassment suit against Yellow Freight. During the time between 1989 and December 5, 2000, former employee David Walsh saw graffiti about Beach every day at the Burnsville terminal, including "Al Beach fucks his mother," " Al Beach sucks donkey cock," and depictions of Beach performing a sexual act with a donkey.

After the verdict in the Jones case, Yellow Freight personnel took a number of remedial and preventative steps. In August 1999 Cover contracted with a

maintenance worker to check the Burnsville terminal twice a day for graffiti and to remove it after recording it. On August 10, 1999, Cover posted a notice at the Burnsville terminal which notified employees that making unwelcome sexual comments violated Yellow Freight's sexual harassment policy and federal law. On August 18, 1999, Yellow Freight mailed a letter to employees at their home addresses which emphasized treating others with respect at the workplace and directed managers and employees to report harassment. In September 1999, Yellow Freight conducted "Respect at Yellow" training for managers and supervisors, which was later extended to all employees in training sessions between November 1999 and March 2000.

After Beach's driving route changed in September 1999, he rarely saw graffiti. From March 15, 1999 to March 15, 2000, the date this action was filed, the only graffiti he saw on trailer walls was "Al Beach sucks" and "Al Beach is gay." Yellow Freight Regional Manager Randy Cox noted on March 22, 2000, however, that "Al Beach is gay so is sly Willie" had been removed from a Yellow Freight trailer. Since that time no graffiti referring to Beach by name has been seen, although the phrases "eat me," "kiss my ass," and "suck me" have been written on his trailer. Rhodus was assigned to check Beach's trailers daily for graffiti.

In March 2000 Beach initiated this action in state court alleging five claims under the MHRA and Minnesota common law. Yellow Freight removed the case to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1332, and summary judgment was granted in favor of Yellow Freight on all claims except that for same sex sexual harassment. That claim was tried to the court which issued Findings of Fact, Conclusions of Law, and Order for Judgment in favor of Beach, awarding him $36,920 in compensatory damages for past and future mental anguish and suffering and for past and future individual counseling expenses, plus reasonable costs and attorney fees. Both sides filed appeals.

II.

The parties raise many issues on appeal. Yellow Freight contends that the district court erred in finding that the graffiti was subjectively offensive to Beach and that the graffiti was sufficiently severe and pervasive to create a hostile working environment. It asserts that it is entitled to judgment because Beach did not prove the required elements for hostile work environment harassment under the MHRA. It also contends that the court abused its discretion by excluding the testimony of an individual who had worked with Beach elsewhere and by allowing Beach to submit testimony to rebut the basis for its motion for judgment as a matter of law. Beach argues in his cross appeal that the district court erred in finding that the phrase "Al Beach Sucks" was not sexual in nature and that the matter should be remanded so that this evidence could be received and considered in redetermination of his damages.

Under the MHRA a plaintiff alleging sexual harassment must prove that the conduct in question satisfies factors detailed in Minn. Stat. § 363.01, subd. 41. The "conduct must be unwelcome, it must consist of 'sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature,' and it must be sufficiently pervasive so as to substantially interfere with the plaintiff's employment or to create a hostile, intimidating or offensive work environment." Cummings v. Koehnen, 568 N.W.2d 418, 424 (Minn. 1997). In order to hold an employer liable for the harassment, a plaintiff must also show that "'the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action.' Minn. Stat. § 363.01, subd. 41." Id.

Yellow Freight argues the district court erred in holding that the first Cummings factor had been met. It contends that since Beach was found to have used sexually explicit language at the Burnsville terminal, the graffiti could not have been found to be subjectively offensive and unwelcome to him. See Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 966 (8th Cir. 1999); Hocevar v. Purdue Fredrick Co., 223

F.3d 721, 736-37 (8th Cir. 2000) ("use of offensive language was not unwelcome because [plaintiff] used the offensive language herself").

Whether language is subjectively offensive depends upon the individual circumstances, Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 - 23 (1993), and Beach's conduct indicated that he found the graffiti to be offensive. In order to find conduct unwelcome, the complaining party must show that he "neither solicited it nor invited it and regarded the conduct as undesirable or offensive." Scusa, 181 F.3d at 966. "The proper inquiry is whether [appellant] indicated by his conduct that the alleged harassment was unwelcome." Id. Beach repeatedly complained to Yellow Freight management about the graffiti. He asked that it be stopped and its source be investigated. He took pictures of the graffiti to show to management and tried to remove the graffiti himself when he saw it. Beach suffered psychological problems as a result of the graffiti. He testified that he felt degraded, demeaned, and humiliated by the graffiti. He had trouble getting out of bed to go to work in the morning, and he switched bathrooms to avoid seeing graphic sexual graffiti about himself on a daily basis. All of this indicates Beach found the graffiti offensive. See Hocevar, 223 F.3d at 730 (evidence that plaintiff complained to management and suffered fear and depression important to finding conduct unwelcome); see also Jenson v. Eveleth Taconite Co., 824 F. Supp. 847, 883 (D. Minn 1993) (evidence that plaintiffs complained about and attempted to remove offensive graffiti was relevant). This evidence supported the district court's finding that Beach was subjectively offended by the graffiti. The district court did not err in determining that Beach had established the first Cummings requirement.

Yellow Freight contends that the district court erred in determining that the graffiti amounted to "severe or pervasive" harassment. It claims that the district court erroneously blurred the distinction between sexual and nonsexual graffiti and impermissibly considered evidence of graffiti seen by other employees in finding the graffiti severe and pervasive enough to create a hostile employment environment. It contends the evidence only shows that Beach saw sexual graffiti on five occasions, and that he therefore did not establish either severe or pervasive harassment.

In order to constitute severe or pervasive harassment, the conduct must be so severe as to "substantially interfere with the plaintiff's employment or to create a hostile, intimidating or offensive work environment." Cummings, 568 N.W.2d at 424. The "conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." See Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998). The district court determined that while the graffiti did not interfere with Beach's employment, it did create a hostile work environment. It based this determination on its findings that the graffiti were subjectively offensive to Beach and also objectively offensive because of their graphic sexual nature and frequent and persistent appearance on trailers and at the Burnsville terminal.

Findings by the district court should not be reversed unless they are clearly erroneous. See id. ("Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the [finder of fact]."). There was substantial evidence in the record regarding the pervasive nature of the graffiti, which the district court could permissibly take into account. The graffiti were of a graphic sexual nature, and Beach repeatedly complained about them to his supervisors. Yellow Freight supervisors admitted at trial that the graffiti should have been stopped and that it had concerned them. Beach testified that he had to switch bathrooms to avoid seeing graffiti about himself on a daily basis. The district court found credible his testimony that the graffiti came to appear in seventy percent of Yellow Freight trailers. Customers and other employees commented to Beach about the graffiti and asked him why he was being treated this way. One customer even threatened to stop using Yellow Freight services if the graffiti in its trailers were not removed  The district court's ruling that the graffiti was severe and pervasive is sufficiently supported by the facts in the record.

Yellow Freight argues that the district court abused its discretion by excluding the testimony of Lou Ann Forseth. Forseth would have testified about Beach's conduct at the Golden Valley Fire Department where both worked. Yellow Freight

claims that this testimony was relevant to show the type of workplace conduct Beach finds acceptable. We review questions of admission of evidence for abuse of discretion and give deference to the ruling of the district court. See Lauzon v. Senco Products, Inc., 270 F.3d 681, 685 (8th Cir. 2001). The district court heard all the evidence and was in the best position to determine the relevance of particular evidence as to whether the graffiti was subjectively offensive to Beach. Yellow Freight has not shown that it abused its discretion by excluding Forseth's testimony.

Yellow Freight claims that the district court abused its discretion by admitting rebuttal evidence after it had moved for judgment as a matter of law at the end of the plaintiff's case for lack of evidence of harassing acts during the statutory period. In his original testimony Beach only mentioned seeing the graffiti "Al Beach sucks" during the limitations period between March 15, 1999 and March 15, 2000, but the district court found that statement nonsexual in nature. The district court reserved ruling on the motion for judgment as a matter of law until all of the evidence was received, see Fed. R. Civ. P. 52(c), and permitted Beach to return to the stand to testify that he had also seen "Al Beach is gay" after switching driving routes in September 1999. Permitting a party "to present additional evidence on rebuttal depends upon the circumstances of the case and rests within the discretion of the … trial judge." Gossett v. Weyerhaeuser Co., 856 F.2d 1154, 1156 (8th Cir. 1988). The district court allowed Beach's rebuttal testimony because it was not inconsistent with his earlier trial testimony or his deposition. We conclude that the court did not abuse its discretion by admitting this evidence because it was relevant and its admission was not unfair or prejudicial to Yellow Freight.

In his cross appeal, Beach argues that the district court disregarded the totality of the circumstances when making the determination that the term "Al Beach sucks" was nonsexual. He concedes that the term "sucks" can connote disapproval or disparagement, but argues that the term in the context of this case is an abbreviated variation of other graffiti that was clearly sexual, such as "Al Beach sucks cock" and other similar phrases seen by Yellow Freight employees. Although we might have made a different finding if we had been the trier of fact, the district court heard all the

evidence and was in the best position to decide the meaning of the term in its context. We cannot say that the district court clearly erred in determining that the term was not sexual in nature.[2]

For these reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2] Beach's other point on appeal—that damages should be reconsidered if there were a new trial—is moot and need not be discussed. See McDonald v. Johnson & Johnson, 722 F.2d 1370, 1388 (8th Cir 1983).