# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1423

_____

| | | |
|---|---|---|
| Wendy Ferguson Sellers, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Norman Y. Mineta, Secretary of | * | Appeal from the United States |
| Transportation, | * | District Court for the |
| | * | Eastern District of Missouri |
| Defendant. | * | |
| | * | |
| John Joseph, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: September 8, 2003

Filed: December 1, 2003

_____

Before LOKEN, Chief Judge, and McMILLIAN and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

John Joseph appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri in favor of Wendy Ferguson Sellers, a

_____

[1]The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri.

former air traffic control specialist with the Federal Aviation Administration (FAA). See Sellers v. Mineta, No. 4:97CV2260 (E.D. Mo. Dec. 13, 2001) (amended judgment). Sellers brought this action against the United States Secretary of Transportation (the Secretary) and Joseph based upon allegations that Joseph sexually harassed and assaulted her while they were both employed with the FAA. Following a jury trial, Sellers was awarded compensatory and punitive damages totaling $215,000 from Joseph, plus additional sums from the Secretary. Now before this court is Joseph's appeal from the judgment.[2] For reversal, Joseph argues that the district court: (1) abused its discretion in ruling on several evidentiary issues, (2) erred in submitting to the jury separate assault and battery claims arising out of a single set of events, and (3) abused its discretion in denying his post-trial "motion to order production of work records." For the reasons stated below, we modify the judgment and otherwise affirm the judgment against Joseph.

Jurisdiction was proper in the district court based upon 28 U.S.C. §§ 1332, 1367. Jurisdiction is proper in this court based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following summary of pertinent background facts is based upon the evidence presented at trial, viewed in a light favorable to the jury's verdict.

---

[2]Both Joseph and the Secretary have appealed. The two appeals have been separated because Joseph filed a bankruptcy petition which triggered a temporary stay of his appeal.

In September of 1987, Sellers[3] began working for the FAA as an air traffic control specialist at Lambert International Airport in St. Louis, Missouri. In or about March of 1996, she became the victim of Joseph's unwanted sexual advances at work. On May 8, 1996, Joseph unexpectedly showed up at Sellers's house. She initially allowed him into the house, but ordered him to leave when he started making sexual advances. Instead of leaving, Joseph walked down a hallway and into her bedroom. Sellers followed him and again ordered him to leave. Joseph pinned her down on the bed, pulled her shirt up and her pants down, exposed his erect penis, and made physical contact with her body. By this time, Sellers was screaming, and she hit Joseph on the head. He got off of her, backed away, and then left the house. Sellers initially did not mention the incident to anyone, including her then-fiancé, Scott Sellers.

Joseph continued to harass Sellers, repeatedly telephoning her and leaving notes in her locker at work. On one occasion, he pinched her on the buttocks in the workplace. She complained to co-workers, supervisors, and union officials that she was being sexually harassed, sometimes mentioning Joseph by name. Eventually, an internal investigation was ordered. FAA supervisor Willie Moore interviewed Joseph and, at the end of the interview, told Joseph to stay away from Sellers. Afterward, a letter officially reprimanding Moore for inadequately handling the matter (hereinafter "the Moore reprimand letter") was placed in Moore's personnel file. The Moore reprimand letter states as one of the grounds for reprimand: "Failure to assess the proper penalty when the facts are known and disciplinary action is warranted (including acts of sexual harassment or other types of prohibited discrimination)." Appellant's Appendix at 36-37 (Plaintiff's Trial Exhibit 16).

---

[3]At the time of the events in question, Sellers's name was Wendy Ferguson. She subsequently married Scott Sellers and changed her name.

At trial, over the objections of both Joseph and the Secretary, Sellers was permitted to introduce the Moore reprimand letter into evidence during her case-in-chief. Four days after the Moore reprimand letter was introduced, Joseph requested that the letter be stricken from the record or, alternatively, that a limiting instruction be given. The district court denied both requests.

Prior to Joseph's presentation of evidence, the district court, for scheduling purposes, requested the names of the witnesses he intended to call. Joseph indicated that he intended to call, among other witnesses, a co-worker, Valerie Warren. Sellers objected on the ground that Warren's name was not on the witness list that Joseph had submitted to the district court before trial pursuant to the district court's case management order and its local rules. The district court sustained Sellers's objection.

At the close of all the evidence, the district court submitted to the jury instructions and verdict forms which included separate instructions and separate verdict forms for Seller's assault and battery claims against Joseph related to the incident that occurred at her house on May 8, 1996. Joseph objected to the submission of the separate claims, arguing that the two should be merged into one cause of action. The district court overruled his objection.

The jury awarded Sellers, among other sums, $50,000 in compensatory damages and $50,000 in punitive damages on the assault claim and $50,000 in compensatory damages and $50,000 in punitive damages on the battery claim, both based upon the May 8, 1996, incident. The jury also awarded Sellers $15,000 in compensatory damages and $15,000 in punitive damages on a separate battery claim based upon the incident in which Joseph pinched Sellers on the buttocks in the workplace. Because Sellers had not specifically asked for punitive damages for the pinching incident, the district court vacated the corresponding $15,000 punitive damages award, and entered judgment setting forth total damages awarded to Sellers from Joseph in the amount of $215,000.

After the entry of judgment, Joseph filed a "motion to order production of work records of plaintiff Wendi Ferguson Sellers for March 5-6, 1996." On the same day, Joseph file a motion for judgment as a matter of law or a new trial, pursuant to Fed. R. Civ. P. 50, asserting, among other grounds for relief, that the district court erred in submitting both the assault claim and the battery claim arising out of the same incident, abused its discretion in admitting the Moore reprimand letter into evidence, and abused its discretion in disallowing the testimony of Valerie Warren; in the same motion, Joseph argued that "[Sellers's] work records for March 5-6, 1996, constitute newly discovered evidence, entitling defendant Joseph to a new trial under [Fed. R. Civ. P.] 60(b)." Upon review, the district court denied all of Joseph's post-trial motions. Sellers v. Mineta, No. 4:97CV2260 (E.D. Mo. Mar. 27, 2001) (memorandum and order). The district court filed an amended judgment, again setting forth total damages awarded Sellers from Joseph in the amount of $215,000. This appeal followed.

**Discussion**

*Evidentiary Rulings*

We begin by addressing Joseph's challenges to the district court's evidentiary rulings. We first consider Joseph's arguments related to the Moore reprimand letter. As indicated above, the letter sets forth as one of the reasons for Moore's reprimand: "Failure to assess the proper penalty when the facts are known and disciplinary action is warranted (including acts of sexual harassment or other types of prohibited discrimination)." Joseph argues that the district court abused its discretion in failing to exclude this highly prejudicial letter under Fed. R. Evid. 403 and in denying his request for an instruction to the jury that the letter was relevant only to the claims against the Secretary. Moreover, he argues, the district court improperly commented upon the letter when it stated: "Mr. Moore obviously made a finding that there was a basis for a claim . . . ." Joseph argues that this comment was improper because "Mr.

Moore's informal investigation lacked the most fundamental protections provided by the Administrative Procedure Act, the Due Process clause, and fundamental fairness." Brief for Appellant at 52. Joseph also suggests that the letter was improperly admitted because it was hearsay evidence offered for the truth of the statement that acts of sexual harassment had occurred.

We review both the district court's admission of the Moore reprimand letter and its denial of Joseph's request for a limiting instruction for an abuse of discretion. See, e.g., Beach v. Yellow Freight System, 312 F.3d 391, 397 (8th Cir. 2002) (admission of evidence reviewed for abuse of discretion); United States v. Kime, 99 F.3d 870, 881 (8th Cir. 1996) (failure to give a requested instruction reviewed for abuse of discretion), cert. denied, 519 U.S. 1141 (1997). The Moore reprimand letter was relevant not only to Sellers's sexual harassment claim against the Secretary, but also to Sellers's battery claim against Joseph arising out of the pinching incident that occurred in the workplace. The Moore reprimand letter was relevant to show, not that sexual harassment had actually taken place, but that the FAA did not take adequate steps to respond to the problem and that Sellers found the pinching incident to be offensive (an issue which Joseph contested at trial). As to the district court's comment that Moore "obviously made a finding that there was a basis for a claim," we disagree that the jury reasonably could have inferred from it that Moore had conducted a formal investigation. In any case, the district court instructed the jury several times that its comments were not evidence and should never be taken as an indication of what the verdict should be. In sum, we hold that the district court did not abuse its discretion in admitting the Moore reprimand letter into evidence or in denying Joseph's request for a limiting instruction.

Joseph also argues that the district court abused its discretion in denying him the opportunity to call Valerie Warren as a witness because he had not included Warren's name on his pretrial witness list. Joseph maintains that Warren's testimony would have been contrary to Sellers's testimony that she (Sellers) avoided Joseph

whenever possible and that she and Joseph did not have an affair. At trial, Joseph's attorney asserted: "[Warren's] testimony will concern [Sellers] seeking John Joseph, looking for him or calling for him or something like that and perhaps having seen them together." Brief for Appellant at 42 (citing Trial Transcript, Vol. VIII, at 149). Joseph also argues that, even though Warren was not on his pretrial witness list, the prospect of her testimony could not have surprised Sellers because Warren's name was on both Sellers's and the Secretary's pretrial witness lists. In any event, Joseph suggests, the more appropriate remedy would have been to grant a continuance, not to exclude Warren's testimony entirely. Brief for Appellant at 43 (citing Black v. J.I. Case Co., 22 F.3d 568, 573 (5th Cir.), cert. denied, 513 U.S. 1017 (1994)).

"We review a district court's exclusion of a witness not named in the pretrial list of witnesses for a clear abuse of discretion." Marti v. City of Maplewood, 57 F.3d 680, 683 (8th Cir. 1995). "'The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential' to the judge's control over the case." Boardman v. National Medical Enterprises, 106 F.3d 840, 843 (8th Cir. 1997) (quoting Admiral Theatre Corp. v. Douglas Theatre Co., 585 F.2d 877, 897-98 (8th Cir. 1978)). In assessing whether a clear abuse of discretion has occurred, we may consider a variety of factors, including, for example, the reason for the failure to list the witness, the possibility of surprise or prejudice to the party against whom the witness would testify, the extent to which allowing the witness to testify would disrupt the order and efficiency of the trial, and the importance of the witness's testimony. See Marti v. City of Maplewood, 57 F.3d at 683 (setting forth factors in two different tests used by this court).

In the present case, Joseph provided no justification for failing to include Warren on his pretrial witness list, nor did he suggest any reason why Sellers should have expected Warren to testify on *his* behalf. Had Warren been identified on Joseph's witness list, Sellers might have taken additional steps to prepare for her testimony, including, for example, taking her deposition. Warren's anticipated

testimony, as described at trial by Joseph's attorney (i.e., that Sellers had looked for Joseph and perhaps that the two had been seen together), even if true, would not necessarily disprove or even undermine Sellers's allegations against Joseph. Finally, as to the suggestion that a continuance would have been appropriate, it does not appear that Joseph ever asked for a continuance. Even if he had, the district court could properly have denied the request. The issue arose late in the trial, at a point where a continuance would undoubtedly have been disruptive to the proceedings and everyone involved. The district court did not abuse its discretion in refusing to allow Warren to testify on Joseph's behalf.

*Submission of Assault and Battery Claims*

We next turn to the legal issues involved in the district court's submission of both the assault claim and the battery claim arising out of the single confrontation at Sellers's house on May 8, 1996. As indicated above, the district court instructed the jury and provided the jury with a separate verdict form for each of these two claims. Joseph timely objected to the submission of both claims, and he renewed the objection in his post-trial motion for judgment as a matter of law or a new trial. The jury awarded $50,000 compensatory damages and $50,000 punitive damages on each claim, for a total of $200,000 of damages arising out of the one incident. The district court upheld the verdict, explaining as follows:

> [T]he undersigned is persuaded by plaintiff's argument that under Missouri law, two causes of action exist for the tort of Assault and the tort of Battery, and the Missouri Approved Instructions provide separate instructions as to each with identifiable separate elements. Compare MAI 23.01 with 23.02 (5th ed. 1996). In the absence of any authority to the contrary defendant has failed to dissuade the Court from its previous ruling that submitting Assault and Battery to the jury as separate claims is not error.

Sellers v. Mineta, slip op. at 5 (Mar. 27, 2001).

On appeal, Joseph again argues that the district court erred as a matter of Missouri law by submitting the two separate assault and battery claims to the jury where they are based upon the same events of May 8, 1996. He maintains that "the general principle in Missouri is that only one cause of action exists for a single transaction." Brief for Appellant at 41. In support, he cites dozens of cases in which a single tort claim was submitted to the jury for a single transaction or set of events, though arguably there could have been two or more claims submitted. See id. at 34-40, 55-58. Joseph states:

> A search of the cases appearing under the topic "Assault and Battery" in the Missouri Digest reveals over fifty civil cases decided in the last sixty-five years wherein "assault," "assault and battery," or "battery" has been submitted to the jury. Not a single case has been found where separate counts have been submitted for "assault" and "battery" involving the same incident or transaction. Put another way, not a single case has been found submitting both MAI 23.01 and MAI 23.02.

Id. at 39. Joseph thus continues: "To support her verdict, [Sellers] needs to show that there is some authority in Missouri for submitting both MAI 23.01 and 23.02 for the same event or transaction." Id. at 41.

In response, Sellers emphasizes that assault and battery are distinct causes of action with different elements of proof, and they do not necessarily rely on the same set of facts. An assault involves an unlawful attempt to injure another, with the apparent present ability to carry out that attempt, and circumstances creating a fear of imminent harm. Battery involves intentional offensive contact. Sellers contends that, while every battery includes an assault, a plaintiff may recover for a battery and for a separate assault arising out of the same series of events. In the present case, she argues, the events of May 8, 1996, occurred as "a series of separate events." In this series of separate events, she explains, "[Joseph] engaged in offensive contact with

plaintiff without her consent, which constituted a battery," and "he also caused plaintiff to be in apprehension of further offensive contact or bodily harm," which constituted the assault. Brief for Appellee at 12.

We decide questions of state law *de novo*. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). Our responsibility is to determine what the Missouri Supreme Court's decision would be in light of that court's pertinent decisions and other sources of Missouri law. See, e.g., Union Pacific R.R. v. Reilly Indus., Inc., 215 F.3d 830, 840 (8th Cir. 2000) ("Our interpretation of [Minnesota] law must comport with pertinent decisions of the Minnesota Supreme Court, but, if none are available, we look to related state court precedents, analogous decisions, considered dicta, and other reliable sources in an effort to determine what the Minnesota Supreme Court's decision would be.").

We begin by considering whether, under Missouri law, the district court could submit to the jury both Sellers's battery claim and her assault claim arising out of the same events of May 8, 1996. On this question, Stafford v. Muster, 582 S.W.2d 670, 679 (Mo. 1979) (en banc) (Stafford), cited by neither Joseph nor Sellers, is instructive. In Stafford, the plaintiff alleged several intentional tort claims against individuals involved in a series of court-related actions taken against her, including two separate imprisonments for contempt of court, in connection with a custody dispute over her husband's child from a previous marriage. The Missouri Supreme Court noted that the plaintiff's claims were based upon four separate court-issued processes, each of which could give rise to a separate intentional tort. Id. at 675. The court then went on to conclude that each of these court processes gave rise to two submissible claims: a claim of malicious prosecution and a claim of abuse of process. See id. at 678-79. By analogy, therefore, we conclude that the Missouri Supreme Court would permit the submission of both Sellers's assault claim and her battery claim based upon the events of May 8, 1996.

-10-

We next consider the matter of damages. Although we conclude that the district court did not err in submitting to the jury both assault and battery theories of liability, that conclusion does not necessarily validate the damages awarded in the present case. The law in Missouri is that a plaintiff may not recover duplicate damages for the same harm. See Alexander v. Kansas City Public Service Co., 268 S.W.2d 451, 454 (Mo. Ct. App. 1954) (instruction on damages improperly permitted jury to award double damages for the same harm); cf. Linkogel v. Baker Protective Servs., Inc., 626 S.W.2d 380, 388 (Mo. Ct. App. 1981) (where the plaintiff sued multiple defendants on multiple tort theories, holding that "plaintiff here may advance all the theories available to him but may only recover one sum as compensatory damages . . . because the false arrest, the assault and battery and the alleged civil rights violations all stem from one single occurrence – the arrest of [the plaintiff]. What damages he may have suffered arise from this one incident and he may not recover multiple damages for them."). Therefore, to the extent the jury may have awarded double damages for the same harm based upon its finding that both theories of liability had been proven, the award was improper.

As noted above, however, Sellers suggests that the jury's award in the present case compensates separate harms flowing from the two separate wrongs in "a series of separate events." She contends that she was harmed when Joseph made physical contact with her without her consent (the battery) and was separately harmed when he caused her to fear imminent rape (the assault).

The Missouri Supreme Court's opinion in Stafford once again provides some guidance. In that case, notwithstanding the determination that the plaintiff could assert numerous tort claims arising out of several events (including two temporally separate imprisonments for contempt of court), the Missouri Supreme Court stated:

> For the guidance of those involved in further proceedings, it should be noted that this petition sets forth several claims stemming

from a single set of occurrences with a single series of damages. Should plaintiff adduce sufficient proof of liability at trial, she may recover but once for the injuries she sustained.

582 S.W.2d at 679.

In light of this statement by the Missouri Supreme Court, we believe that, if deciding the case at bar, that court would reject Sellers's present argument and hold that the award of $50,000 in compensatory damages and $50,000 in punitive damages for each of Sellers's assault and battery claims, arising out of the single set of occurrences with a single series of damages, constituted impermissible double damages. Consequently, we modify the damages award against Joseph such that Sellers shall receive $50,000 in compensatory damages and $50,000 in punitive damages for all of the injuries she sustained as a result of the confrontation in her home on May 8, 1996. The total amount of damages awarded to Sellers from Joseph is therefore reduced from $215,000 to $115,000. Accord Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 379 (Minn. 1990) (where plaintiff brought statutory sexual harassment claim and common law battery claim arising out of same conduct, vacating damages for the battery claim on the ground that "[a]lthough we decide parallel actions can be maintained, we do not uphold double recovery for the same harm.").

*Denial of Post-trial "Motion to Order Production of Work Records"*

Finally, we consider Joseph's argument that the district court abused its discretion in denying his "motion to order production of work records." As noted above, Joseph filed a post-trial motion asking the district court to order the FAA to produce Sellers's work records for the dates of March 5-6, 1996. The basis for this unusual post-trial motion is explained by Joseph as follows. See Brief for Appellant at 45-48. Prior to trial, Sellers consistently maintained – including in her deposition

testimony – that Joseph visited her in the air traffic control tower one night during the week of March 7, 1996, and that the following night Joseph telephoned her while she was working in the tower and he was at home; according to Sellers, this was how the sexual harassment began. At trial, however, after learning that Joseph's telephone records showed a call from his home to the tower placed shortly after midnight on March 7, 1996, Sellers testified that tower visit occurred on the night of March 5-6, 1996, not during the week of March 7, 1996. Joseph thus explains:

> If the government's records show that [Sellers] worked the midnight shift of March 5-6, 1996, then she made a simple error *ab initio*, and there are no grounds for a new trial on this issue. On the other hand, if these records show that [Sellers] did _NOT_ work on that shift, [Sellers's] whole story, from the beginning, collapses like a house of cards.

Id. at 48.

In the district court, Joseph indirectly relied on Fed. R. Civ. P. 60(b) as authority for this "motion to order production of work records." He stated: "Said records are crucial to a determination of issues raised in defendant Joseph's motion for new trial, the contents of which are incorporated by reference herein." Appellant's Appendix at 38 (Joseph's motion to order production of work records). In that referenced motion for a new trial, Joseph asserted: "[Sellers's] work records for March 5-6, 1996, constitute newly discovered evidence, entitling defendant Joseph to a new trial under Rule 60(b)." He further asserted: "[Sellers's] false testimony that the tower visit occurred in the early morning hours of March 6, 1996, constituted intrinsic fraud, entitling defendant Joseph to a new trial under Rule 60(b)." Appellee's Appendix at 25 (Joseph's motion for new trial or judgment as a matter of law).

In considering Joseph's Rule 60(b) assertions, the district court appropriately relied upon Atkinson v. Prudential Property Co., 43 F.3d 367, 371-73 (8th Cir. 1994) (Atkinson), in which we explained:

> To prevail on a motion under 60(b)(2), the movant must show: (1) that the evidence was discovered after trial; (2) that the party exercised due diligence to discover the evidence before the end of the trial; (3) that the evidence is material and not merely cumulative or impeaching; and (4) that a new trial considering the evidence would probably produce a different result.
>
> . . . .
>
> To prevail on a motion under Rule 60(b)(3), the movant must show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case.

The district court then went on to hold that Joseph was not entitled to any relief under Rule 60(b) because, even if the requested records qualified as "newly discovered evidence," the evidence would be merely impeaching and Joseph had not shown that he had exercised due diligence to discover them before the end of the trial; furthermore, even if the requested records would impeach Sellers's testimony that she worked the night shift on March 5-6, 1996, "[Joseph] has failed to show how such testimony prevented him from fully and fairly presenting his case." See Sellers v. Mineta, slip op. at 12 (Mar. 27, 2001).

On appeal, Joseph again does not cite Rule 60(b) directly. He does, however, rely upon Rule 60(b)(3) by implication by arguing that: "'A new trial is properly granted where a party can: (1) prove by clear and convincing evidence that the verdict was obtained by fraud, misrepresentation, or other misconduct [and] (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting

his case or defense.'" Brief for Appellant at 48 (quoting <u>Wharf v. Burlington Northern R.R.</u>, 60 F.3d 631, 637 (9th Cir. 1995)).  Joseph then concludes:

> Before the trial court can decide whether a new trial is warranted if plaintiff did not, as she positively swore at the end of the trial, work the evening of March 5-6, it needs to know whether this assertion is true or false.  The truth is only one easily available scrap of paper away.  At the least, the trial court should inform itself as to whether plaintiff's testimony on this issue is knowingly false.

Brief for Appellant at 49-50.

Rule 60(b) provides extraordinary relief in exceptional circumstances.  The district court has wide discretion in ruling on a Rule 60(b) motion, and we will reverse only for a clear abuse of discretion.  <u>See</u> <u>Atkinson</u>, 43 F.3d at 371.  In the present case, the district court reasonably denied Joseph's "motion to order production of work records" under both Rule 60(b)(2) and 60(b)(3).  As the district court indicated, even if the records showed that Sellers did not work the night of March 5-6, 1996, the records would be relevant to the claims against Joseph only as impeachment evidence.  Moreover, such evidence would not demonstrate that Sellers had prevented Joseph from fully and fairly presenting his case.  By Joseph's own account, Sellers has maintained from the beginning that the tower visit occurred the night before he telephoned her at work in early March.  Joseph had his own phone records. If, as he now suggests, the tower visit never occurred, it should have been apparent to him from the beginning that he should look for evidence disproving that the tower visit occurred on March 5-6, 1996, the night before he placed the March 7th phone call.  Joseph never sought the disputed work records prior to the end of the trial, even *after* Sellers specifically testified at trial that the tower visit occurred on the night of March 5-6, 1996.  In sum, we hold that the district court did not abuse its discretion in denying Joseph's post-trial motion to order the FAA to produce Sellers's work records for the dates of March 5-6, 1996.

## Conclusion

For the reasons stated, the judgment of the district court is modified so that the total amount of damages awarded to Sellers from Joseph is reduced from $215,000 to $115,000. The judgment of the district court against Joseph is affirmed in all other respects.

_____