# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3378
_____

| | | |
|---|---|---|
| Aida Fary Diop, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review |
| v. | * | of an Order of the |
| | * | Board of Immigration Appeals. |
| Eric H. Holder, Jr., Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: September 22, 2009
Filed: November 9, 2009 (Corrected: 11/09/2009)

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Aida Fary Diop, a native and citizen of Senegal, petitions for review of a Board of Immigration Appeals (BIA) decision affirming the immigration judge's (IJ) denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  We deny the petition.

## I. Background

### A. Factual Background

Diop is a Christian and a member of the Wolof tribe. From 1993 to 1995, Diop was romantically involved with Mamadou Moustapha Kane (Moustapha). Moustapha is a Muslim and a member of the Toucouleur tribe. After meeting with Moustapha's family, Diop's parents instructed her to end the relationship, but Diop continued to see Moustapha until she discovered that she was pregnant.

Diop's daughter, A.K., was born in December 1995. She bears her father's last name, and Moustapha is identified as her father on her birth certificate. From A.K.'s birth until she and Diop moved to the United States in 2000, Moustapha visited A.K. approximately once a month at Diop's parents' home. Moustapha never expressed an intent to have A.K. undergo female genital mutilation (FGM). Diop has not had contact with Moustapha since she left Senegal.

Diop married Modiene Kane (Modiene) in 1999 and came to the United States to be with him. Diop, arriving with A.K., entered the United States on August 13, 2000, as a nonimmigrant visitor with authorization to remain until October 12, 2000. Diop overstayed her visa. Diop and Modiene have had two children together, both born in the United States. Modiene filed for divorce in January 2007.

Diop testified that she learned that A.K. would be subjected to FGM if Diop and A.K. returned to Senegal. During a January 2007 phone call, Diop's mother, Elvire Dores, told Diop that Moustapha's family planned to force A.K. to undergo FGM and that Moustapha's family had arranged for someone to perform the procedure. Dores testified that Aliou Tall, a friend of Diop's brother and a relative of Moustapha's, informed her of the risk to A.K. in 2003 or 2004. There is in the record a copy and translation of an undated letter from Tall to Dores that was allegedly prepared at

Diop's request to confirm what he had told Dores several years earlier. Dores also told Diop that during the 1995 meeting Moustapha's parents stated that Diop would have to convert to Islam and undergo FGM to marry Moustapha. It is Diop's testimony that she was not aware of the risk that A.K. would be subject to FGM until the January 2007 conversation with her mother. Diop believes that if she returns to Senegal Moustapha's family will find A.K., kidnap her, force her to undergo FGM and force Diop to observe the procedure.

## B. Procedural Background

In March 2007, the Department of Homeland Security (DHS) charged Diop with removability under 8 U.S.C. § 1227(a)(1)(B), as an alien who remained in the United States longer than permitted when admitted as a nonimmigrant, and under 8 U.S.C. § 1227(a)(1)(C), as an alien who failed to maintain or comply with the conditions of the nonimmigrant status. Diop conceded removability and then filed her defensive application for asylum, withholding of removal, and protection under the CAT. Diop petitioned for asylum, in part, based on her fear that A.K. would be subjected to FGM by her father's family and that she would be forced to observe the genital mutilation of her daughter if they returned to Senegal.

Although Senegal outlawed FGM in 1999, the parties stipulated that FGM continues to be practiced by some tribes. The parties presented differing statistics about the rates of FGM and the age at which a girl is subjected to the procedure. Dores testified that girls are typically subjected to FGM when they are five to six years old. The U.S. Department of State report on Senegal states that the age at which the procedure takes place varies by ethnic group but that most females that undergo the most severe type of FGM are subjected to the procedure between two and five years of age.

During the hearing, Diop called as an expert witness Ms. Hanny Lightfoot-Klein. The parties stipulated that Lightfoot-Klein's testimony would be limited to the Toucouleur's FGM practices and any harm Diop or A.K. would face upon return to Senegal. Following Lightfoot-Klein's acknowledgment that she had never been to Senegal or done any research specific to the Toucouleur tribe in Senegal, the IJ excluded her testimony. Although initially the IJ did not allow Diop to make an offer of proof, she subsequently allowed Diop to proffer what Lightfoot-Klein's testimony would have been and admitted as part of the record Lightfoot-Klein's affidavit stating that "[t]here is no way in which Ms. Diop would be able to prevent the genital mutilation of this daughter."

Diop attempted to call Ms. Andrea Chrismer-Still, who had been treating Diop for more than a year, to testify about the counseling that Diop had received and about Diop's mental condition. The IJ did not allow Chrismer-Still to testify because her name had not appeared on the witness list prior to the hearing.

The IJ denied Diop's application for asylum, finding that she did not establish a well-founded fear of future persecution or torture should she return to Senegal. The BIA adopted and affirmed the IJ's decision, adding comments of its own, and dismissed the appeal. Diop's petition for review contends that the IJ and BIA decisions are not supported by substantial evidence and that her right to due process was violated by the exclusion of expert testimony and the lack of an impartial adjudicator.

## II. Analysis

Asylum may be granted to an applicant who is determined to be a refugee. 8 U.S.C. § 1158(b). A refugee must have "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "A well-founded fear is one that is

both subjectively genuine and objectively reasonable." Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997). "Subjectively, the alien must demonstrate with credible evidence that he genuinely fears persecution; objectively, he must demonstrate through credible, direct, and specific evidence that a reasonable person in his position would fear persecution." Id.

When a BIA decision not only adopts and affirms the IJ's decision, but also adds reasoning of its own, we review both decisions together. Chen v. Mukasey, 510 F.3d 797, 800 (8th Cir. 2007). Underlying factual findings in a denial of asylum are reviewed for substantial support in the record. Manivong v. Dist. Dir., U.S. Dep't of Justice INS, 164 F.3d 432, 433 (8th Cir. 1999). The IJ's decision will be upheld unless the evidence "was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Nyama v. Ashcroft, 357 F.3d 812, 816 (8th Cir. 2004) (internal quotations omitted) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992)).

A. Substantial Evidence

Diop applied for asylum based on her fear that A.K. would be subjected to FGM and that she would be forced to observe the genital mutilation of her daughter. The BIA held that even though Diop may subjectively fear for her daughter's safety, the record does not establish an objective risk that A.K. will be subjected to FGM against Diop's will.

The IJ and BIA relied, in part, on the evidence that: 1) A.K.'s father visited her every month until age four years and eight months and never discussed FGM with Diop or her family or attempted to subject A.K. to FGM; 2) FGM is illegal in Senegal; and 3) A.K. is now older than the typical age at which females in Senegal are subject

to the most severe form of FGM, the form practiced by the Toucouleur. The IJ considered the evidence corroborating Diop's fear, including the unsworn letter allegedly from Tall that contained general assertions, and chose to give it little weight. We conclude that this evidence is not so compelling that no reasonable fact finder could fail to find the requisite fear of persecution.

## B. Due Process Claims

Diop argues that her due process rights were violated by the IJ's exclusion of Chrismer-Still's and Lightfoot-Klein's testimony. To establish a due process violation, Diop must "demonstrate both a fundamental procedural error and that the error resulted in prejudice." Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir. 2003). Prejudice requires "a showing that the outcome of the proceeding may well have been different had there not been any procedural irregularities." Tun v. Gonzales, 485 F.3d 1014, 1026 (8th Cir. 2007).

The IJ did not err in excluding Chrismer-Still's testimony. We review the decision to exclude a witness not identified on the pretrial witness list for an abuse of discretion. Sellers v. Mineta, 350 F.3d 706, 711 (8th Cir. 2003). Factors relevant to the analysis include: "the reason for the failure to list the witness, the possibility of surprise or prejudice to the party against whom the witness would testify, the extent to which allowing the witness to testify would disrupt the order and efficiency of the trial, and the importance of the witness's testimony." Id. at 711-12. The IJ noted that Chrismer-Still had been treating Diop for more than a year, that there was no compelling justification for Diop's failure to include her on the witness list, and that DHS opposed the testimony because it had not been given the opportunity to review anything in writing from the witness. Given these circumstances, the IJ did not abuse her discretion in excluding the testimony.

-6-

The BIA held that although the IJ should have allowed at least some testimony from Lightfoot-Klein, Diop suffered no prejudice. The parties stipulated that FGM continues to exist and is performed by some tribes in Senegal. Lightfoot-Klein acknowledged that she had never been to Senegal and that she had not researched the Toucouleur tribe in Senegal. The IJ found that Lightfoot-Klein would not be qualified as an expert on the Toucouleur tribe in Senegal and therefore excluded her testimony. The IJ nevertheless included Lightfoot-Klein's affidavit as part of the record. We agree with the BIA that Diop failed to demonstrate that Lightfoot-Klein could have added relevant information beyond that set forth in the affidavit.

Diop analogizes the exclusion of the expert witness to our decision in Tun v. Gonzales. In that case, however, we explained that the expert "was clearly qualified and offered critical corroborating testimony based on a recent medical examination of the Petitioner." 485 F.3d at 1027. Unlike the petitioner in Tun, Diop has not shown how she would have benefitted from the expert's testimony. Thus, she has not established a due process violation.

Finally, Diop contends that her due process rights were violated because the IJ was biased in favor of the government and was not an impartial adjudicator. Diop maintains that the IJ's bias is demonstrated by the IJ's reliance on stipulations of the parties to narrow the scope of the permissible testimony of Lightfoot-Klein, the IJ's participation in voir dire of Lightfoot-Klein, and the IJ's questioning of witnesses to establish the lack of a direct threat to A.K. We conclude that these arguments are without merit because the IJ's decisions were not fundamental procedural errors. Diop's attorney agreed to the stipulations narrowing Lightfoot-Klein's testimony. The IJ's participation in voir dire and examination of the witnesses was within her authority to conduct the proceeding. See 8 U.S.C. § 1229a(b)(1) ("The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-

examine the alien and any witnesses."); <u>Al Khouri v. Ashcroft</u>, 362 F.3d 461, 465 (8th Cir., 2004) ("[W]e recognize the IJ's authority to conduct proceedings, including the questioning of witnesses, in an efficient and orderly manner.").

      The petition for review is denied.

_____