# United States Court of Appeals
## For the Eighth Circuit
_____

No. 18-2186
_____

Landmark Infrastructure Holding Company, LLC

*Plaintiff - Appellee*

v.

R.E.D. Investments, LLC; Bobby Van Stavern

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: April 15, 2019
Filed: August 9, 2019
_____

Before SMITH, Chief Judge, ARNOLD and KELLY, Circuit Judges.
_____

ARNOLD, Circuit Judge.

This case involves a billboard deal gone bad. Lamar Advertising maintained and operated a billboard on land that it leased from R.E.D. Investments, LLC, and Lamar paid R.E.D. $70,000 annually in rent (though that number was set to increase over the life of the lease) plus a percentage of the revenue that the billboard generated. Lamar had the right to terminate the lease at any time.

About nine months into this arrangement, Landmark Infrastructure Holding Company, LLC, contacted Bobby Van Stavern, who represented R.E.D. in its business dealings, about purchasing R.E.D.'s interest in the lease. R.E.D. and Landmark eventually executed an agreement under which Landmark agreed to pay R.E.D. just over $900,000 in exchange for, among other things, the right to receive rent from Lamar. In that agreement, Van Stavern, as R.E.D.'s "manager," represented that Lamar had not requested to have the rent lowered and that R.E.D. had no "notice of any fact, condition or circumstance" suggesting that Lamar might do so. But about a month after R.E.D. and Landmark executed the agreement, Lamar informed Landmark that it wanted to reduce the rent. Landmark and Lamar eventually entered into a new lease containing a ten-year term with annual rental payments of $30,000 for the first five years and $36,000 for the five years after that, plus the same percentage of the revenue as in the original lease.

Because it came to believe that Van Stavern's representations had been false, Landmark sued R.E.D. for breach of contract and sued R.E.D. and Van Stavern for fraudulent and negligent misrepresentation. The case proceeded to trial, and a jury found in Landmark's favor on its breach-of-contract and negligent-misrepresentation claims, awarding $156,000 and $381,234.11 in damages, respectively. R.E.D. and Van Stavern moved for a new trial, or in the alternative, a remittitur or merger of the damages awards on the ground that they were duplicative, but the district court[1] denied the motion. The district court also awarded Landmark approximately $200,000 in attorneys' fees.

On appeal, R.E.D. and Van Stavern raise three primary issues. They say, first, that the district court erred by excluding testimony from their proposed expert witness. We review this evidentiary ruling "for clear and prejudicial abuse of

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

discretion." *See Am. Auto Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722 (8th Cir. 2015). The appellants identified an expert who, as relevant, would opine that Landmark had mistakenly thought that the billboard required government permits for operation—a mistake that put Landmark at a significant disadvantage when negotiating with Lamar over a new lease because Landmark felt obliged to negotiate with Lamar (whom Landmark believed held the permits) rather than shop the market for another tenant who would pay a higher rent. R.E.D. and Van Stavern contend that this opinion was important because it related to the value of Landmark's billboard interest (and thus affected the damages calculation) and, relatedly, substantiated their defense that Landmark had failed to mitigate its damages, which Missouri law requires of those who suffer from a breach of contract. *See Hertz Corp. v. RAKS Hosp., Inc.*, 196 S.W.3d 536, 548 (Mo. Ct. App. 2006).

In excluding this evidence, the district court held essentially that the expert's opinions were not relevant because they were premised on facts that were not in the record. *See Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952–53 (8th Cir. 2014). The expert's opinions here stemmed from his understanding that the billboard did not require permits, but as the district court explained, the record did not support that understanding. As the court noted, "whether a third party could erect a billboard at the site is a legal question as to which there was no legal expert testimony or other legal evidence," and none of the witnesses identified "has a legal understanding sufficient to make their testimony reliable and useful to the jury." At trial, R.E.D. and Van Stavern sought to cure this defect by making two offers of proof from witnesses who testified that the billboard did not require permits. Believing that the lack of evidentiary foundation was cured, R.E.D. and Van Stavern again requested that its expert be allowed to testify. The district court declined, explaining essentially that the gambit had come too late.

R.E.D. and Van Stavern maintain on appeal that the district court abused its discretion by not allowing the expert's testimony even after their offers of proof had

undergirded his proffered opinion. We disagree. "Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court." *See Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 415 (8th Cir. 2005). A court acts within that broad discretion in excluding expert testimony when the basis of that testimony, and thus its reliability and helpfulness to the jury, is not made clear in a timely fashion. *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008–09 (8th Cir. 1998). District court scheduling orders commonly feature deadlines for expert disclosures, reports, and *Daubert* challenges. R.E.D. and Van Stavern have not offered a substantial justification for their delay; they had ample time during years of discovery to ensure that their expert's opinions had the necessary factual support. On this record, affirmance would not result in "fundamental unfairness." *See Wegener v. Johnson*, 527 F.3d 687, 690 (8th Cir. 2008).

The second primary contention that R.E.D. and Van Stavern advance on appeal is that the district court erred by denying their request to merge the two damages awards into a single one. They maintain that the jury awarded Landmark duplicative damages for the same injury. The district court began its consideration of this issue by deciding that federal law was applicable, and thus that there was a presumption that the damages awarded were not duplicative. *See Matrix Grp. Ltd. v. Rawlings Sporting Goods Co.*, 477 F.3d 583, 592 (8th Cir. 2007). R.E.D. and Van Stavern contend that the court should have applied Missouri law instead.

Even if, as appellants insist, Missouri law applies, all we have here is a false conflict since there is no discernable difference between federal and Missouri law on this matter. R.E.D. and Van Stavern take issue with presuming that damages awards are not duplicative, which federal law requires, but Missouri law functionally requires the same kind of deference to jury verdicts. Under that law, "verdicts should be construed to give them effect if it can reasonably be done," and "the jury's intent is to be arrived at by regarding the verdict liberally." *See Morse v. Johnson*, 594 S.W.2d 610, 616 (Mo. banc 1980). So in Missouri, courts are obligated to make every

reasonable effort to reconcile a jury's verdicts before setting them aside, a rule that does not differ materially from the federal rule we followed in *Matrix*.

Turning to the merits, R.E.D. and Van Stavern insist that the awards should be merged because they remedy the same injury. We first observe that, though not dispositive, the fact that the jury awarded different amounts on each claim suggests that the jury did not intend to duplicate the award. *Cf. Sellers v. Mineta*, 350 F.3d 706, 714 (8th Cir. 2003). More important, a careful examination of the verdicts does not bear out the appellants' contention. After Landmark bought its interest in the billboard, but before it had received word that Lamar might seek to reduce the rent, it sold its interest to a private equity fund owned in part and managed by Landmark's parent company for $1,246,177.55. Once it came to light that Lamar wanted to reduce the rent, the parties to the sale rescinded it, and after Lamar and Landmark agreed on the new lease with the lower rent, Landmark resold its interest for $521,124.00. So the difference in value between what Landmark thought it would receive and what it actually received was $725,053.55, which is the total amount Landmark asked the jury to award. But the total damages that the jury awarded were much less. The jury's aggregate award is well within the bounds of the evidence presented at trial, which is consistent with the jury having "rationally allocate[d] damages between the two different causes of action, one for breach of contract, and one for tort." *See Matrix*, 477 F.3d at 592. And, for the reasons that follow, that may very well be what the jury did here.

The jury awarded Landmark $381,234.11 on its negligent-misrepresentation claim. This amount corresponds (to the penny) to Landmark's out-of-pocket loss, that is, the difference between what Landmark bought the interest for and what Landmark sold it for. As it happens, this is the proper measure for rescission damages in an action for negligent misrepresentation, *see Frame v. Boatmen's Bank of Concord Vill.*, 824 S.W.2d 491, 495–97 (Mo. Ct. App. 1992), though the jury was not explicitly told that. But the main point is that the jury's precision makes it clear that it had focused

on very specific evidence in fixing the damages for negligent misrepresentation. That fact alone makes it unlikely that the award for breach of contract is duplicative.

The jury awarded Landmark a round $156,000.00 on its contract claim. Landmark had hoped to recover another $343,819.44 for the lost benefit of its bargain with R.E.D. and Van Stavern, which Missouri law recognizes as the proper measure of damages in a breach-of-contract action, *see Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 669 (Mo. banc 1999), though the jury was not explicitly told that. As the district court pointed out, there may have been good reason for the jury to award less than Landmark requested since its "lost profits were valued solely on the basis of transactions with an affiliated entity" without "external validation."

All this makes for a reasonable explanation of what the jury did, but to uphold the awards it is not necessary for us to conclude that the jury actually took this path. The only issue here is whether there is some reasonable possibility that the jury's awards were not duplicative. In other words, because of the deference we owe to the verdicts, we cannot set the awards aside unless there is a necessary inference, not merely a permissible one, that they were duplicative. Because there is no showing here that the jury's awards necessarily overlapped or were duplicative, we reject R.E.D. and Van Stavern's contention along with the related one that they are entitled to a remittitur. To the extent they argue that the jury acted out of passion and prejudice, we reject that argument as well because there is no evidence that it did.

For their final point, R.E.D. and Van Stavern maintain that the district court abused its discretion by awarding Landmark $207,704.74 in attorneys' fees. They believe that the district court erroneously concluded that the contract between the parties allowed the recovery of attorneys' fees in this instance. Of course, if a contract provides for the payment of attorneys' fees incurred in enforcing an agreement, the trial court must award those fees, *DocMagic, Inc. v. Mortg. P'ship of Am., L.L.C.*, 729 F.3d 808, 812 (8th Cir. 2013), and the contract here specifically provides that the

prevailing party is entitled to attorneys' fees "[i]n any action or proceeding brought to enforce" the agreement. Appellants suggest that this action sounded essentially in tort, not in contract, and thus fees are not recoverable. But the case was tried on both a tort and contract theory, the jury awarded damages for breach of contract, and the court entered judgment on that award. So it is evident that Landmark is entitled to fees attributable to the prosecution of its contract claim. Perhaps the appellants mean to say that the suit against them was not brought to enforce the agreement since Landmark sought damages and not specific performance. But a suit for damages for breach of contract, no less than a suit for specific performance, is a suit brought to enforce a contract; in each, a court gives legal force to the parties' agreement against a party in breach. We observe that at least one Missouri court has recognized this logic and has awarded fees in actions for damages based on a contract with language materially identical to the language at issue here. *See Evans v. Werle*, 31 S.W.3d 489, 491, 493 (Mo. Ct. App. 2000).

R.E.D. and Van Stavern correctly point out that if Landmark is entitled to fees, it can recover only for work done in furthering the contract claim. But R.E.D. and Van Stavern do not identify any specific charges in the attorneys' billing records that the district court should have disallowed, despite plenty of opportunity (and prodding by the district court and Landmark) to do so. Further, we have explained that "[w]hen a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims" as, for instance, when they "involve a common core of facts or are based on related legal theories." *See Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001). The claims here were virtually inseparable, all of them being based on the same misrepresentations. There is no abuse of discretion here.

Affirmed.

_____