**Joseph W. MARTI, Jr. and Gregory B. Marti, Appellants,**

v.

**The CITY OF MAPLEWOOD, MISSOURI; Andrew Hummert; Robert Biggerstaff; Eugene Tisius; Lawrence Brockmeier; Mark Griffin; Michael Martin; John Doe; John Doe, II; John Doe, III; John Doe, IV, Appellees.**

No. 94–3438.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1995.

Decided June 19, 1995.

Arthur G. Muegler, Jr., St. Louis, MO, argued, for appellant.

Peter J. Dunn, St. Louis, MO, argued, for appellee.

Before LOKEN, Circuit Judge, LAY, Senior Circuit Judge, and NANGLE, Senior District Judge.[*]

NANGLE, Senior District Judge.

The appellants-plaintiffs appeal from several of the district court's [1] rulings during the trial of this case. The appellants challenge the district court's refusal to allow appellants to put up a witness that had not been named in the pretrial order, refusal to admit some of appellants' exhibits on the ground of relevancy, and the granting of judgment as a matter of law on appellants' conspiracy claims under 42 U.S.C. § 1985(3) and Missouri common law and appellants' Fourth Amendment unreasonable seizure claims. We affirm.

## I.

The parties present strikingly different version of the facts. According to appellants, brothers Joseph Marti ("Joe") and Gregory Marti ("Greg"), and their uncle, Donald Marti, left the Quik Trip convenience store in Maplewood, Missouri, after buying some cigarettes around 1 a.m. the morning of July 3, 1992. Appellants left in a pick-up truck, with Greg driving, and their uncle left in his Bronco. Appellants decided to drop off the truck at Joe's mother-in-law's house on Oxford Street because the defroster was not working. Not being able to find a parking space on Oxford Street, Greg Marti turned the corner onto Kensington Street. Shortly thereafter, Donald Marti pulled alongside the truck to see what was going on. A police car pulled up behind Donald with its lights on. Donald moved his vehicle a little way down the street and stepped out to talk to the officer, Officer Brockmeier. Another police car driven by Officer Griffin pulled up behind the truck and then two more police cars, driven by Officers Tisius and Martin, pulled up in front of the truck. Officer Griffin yelled at the appellants, "[w]hat ... are you gonna make me get out in this f------ rain?". He exited the police car and walked up to appellant Greg Marti, who had stepped out of the truck, and asked him his name and what he was doing there. When Greg made no answer after two inquiries, Griffin popped Greg in the chest, spun him around, and struck his head with his nightstick/flashlight. A melee then broke out between appellants and the officers.

Appellees contend that on the night of July 3, 1992, Officer Martin responded to a disturbance call at the Quik Trip. Three drunken suspects had engaged in a loud argument at the store and threatened a store employee. Witnesses at the scene described the persons as three white males driving a pick-up truck with a lawn mower in the back and a Bronco without a top on it. The witnesses stated that as the vehicles drove away they collided with each other and drove over a median and concrete street divider. Officer Martin relayed the descriptions over the police radio. Shortly thereafter, Officer Brockmeier radioed that he had the Bronco pulled over. Moments later, Officer Griffin radioed that he had located the second vehicle and the other two officers then arrived at the scene. When Officer Griffin approached the truck, he saw Greg Marti squatting by the back tire of the passenger's side of the vehicle. Greg refused to identify himself after being asked twice by Officer Griffin. Joe Marti then sprang from the vehicle and rushed Officer Griffin. Griffin claims he threw up his arms to defend himself although he did not strike Joe. Griffin instructed Officer Martin to arrest Joe for peace disturbance. Both officers struggled to handcuff Joe as he physically resisted arrest. During this time, Greg interfered with the arrest by pulling on Officer

---

[*] The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Catherine D. Perry, then United States Magistrate Judge sitting by consent of the parties, now United States District Judge for the Eastern District of Missouri.

Martin. Joe was finally placed in handcuffs and put in the back of Martin's vehicle. Greg was then arrested by Officer Tisius and placed in the back seat of Tisius' patrol car. Greg climbed out of the seat belt, got into the front seat, and left through the window. He was placed back in the car by the officers.

Pursuant to policy, Joe and Greg Marti were taken to Regional Hospital for a Fit for Confinement Certificate required in all cases where there is resistance to arrest. They refused treatment and the certificate was signed. During the entire incident, hospital visit and confinement, appellants were screaming abusive and obscene comments at the officers. Joe Marti was charged with public peace disturbance, resisting arrest, property damage and assaulting a police officer. Greg Marti was charged with public peace disturbance, resisting arrest, property damage, assaulting a police officer, and attempting to escape custody.

The appellants filed suit in the district court against the City of Maplewood, the mayor, the police chief, and the four officers involved in the incident. The complaint alleged various violations of appellants' civil rights under 42 U.S.C. § 1983, a conspiracy pursuant to 42 U.S.C. § 1985(3) and a state law pendent claim of unlawful civil conspiracy. A jury trial was commenced on June 27, 1994. At the close of appellants' case, the district court directed judgment as a matter of law for the appellees on both the federal and state law conspiracy claims and the unreasonable seizure claim. The remaining claims were submitted to the jury. The jury returned a defense verdict and this appeal was taken.

## II.

Appellants contend that the district court erred in excluding the testimony of witness Amy Geisler in appellants' rebuttal case. Her testimony was excluded by the trial court because her name was not disclosed in the pretrial list of witnesses. Appellants contend that, given the nature of the testimony and the circumstances surrounding the late discovery of the witness, the trial court should have permitted Geisler to testify. We disagree.

We review a district court's exclusion of a witness not named in the pretrial list of witnesses for a clear abuse of discretion. *Blue v. Rose,* 786 F.2d 349, 351 (8th Cir. 1986). The pretrial order in this case stated that, except for good cause shown, no party would be allowed to call a witness not identified in a list given to the opposition and the court before trial. In denying appellants' request, the trial court stated that part of the reason for the pretrial requirement was to avoid surprise witnesses. Transcript, Volume III, at 213–214.

Two similar tests, or sets of factors, have been used by this court to determine whether a witness's testimony should be excluded if that witness was not named in the pretrial order. The first test looks at "the reason for failing to name the witness, the importance of the witness's testimony, the opposing party's need for time to prepare for the testimony, and whether a continuance would be useful." *Patterson v. F.W. Woolworth Co.,* 786 F.2d 874, 879 (8th Cir.1986); *see also Citizens Bank v. Ford Motor Co.,* 16 F.3d 965, 966 (8th Cir.1994). The second test looks at:

(1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified;

(2) the ability of that party to cure the prejudice;

(3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court;

(4) bad faith or willfulness of the party failing to comply with the court's order.

*Morfeld v. Kehm,* 803 F.2d 1452, 1455 (8th Cir.1986).

Under either test it cannot be said that the trial court abused its discretion in refusing to allow Geisler to testify. According to appellants, Geisler would have offered testimony that Officer Tisius stated that he had beat up two guys pretty severely and was afraid he was going to get in trouble over it. He is alleged to have made this statement in Geisler's presence within seven days of the incident in dispute in this case. On voir dire, Tisius denied making this state-

ment. Transcript, Volume III, at 83. Appellants assert that the testimony would have impeached Tisius's denial of this statement and would have been admissible as an "admission against interest" pursuant to Fed. R.Evid. 801(d)(2). Appellants further assert that they did not learn of the witness until the trial had already commenced. Two of appellants' witnesses brought Geisler to the attention of appellants' counsel during the trial. Therefore, appellants contend that the late discovery of the witness was not due to a lack of diligence or any bad faith on their part.

Even accepting appellants' argument that the witness's late discovery was not due to bad faith or lack of diligence, the importance of the testimony mitigates against inclusion of the witness. Merely impeaching evidence, even if admissible as an admission against interest, is not critical testimony in this type of trial. Moreover, it would have unfairly prejudiced the appellees to include the testimony of a witness they had never heard of before that time. A continuance of the trial to allow appellees to depose the witness would have certainly disrupted the trial and was not warranted given the relatively unimportant testimony sought to be introduced. Moreover, allowance of the witness in this case would render the pretrial order's requirement of witness lists prior to trial virtually meaningless. Accordingly, we affirm the trial court's ruling excluding Amy Geisler as a rebuttal witness.

### III.

Appellants further contend that the district court erred by excluding the admission of plaintiffs' exhibits 42, 43, 44, and 46, all official written policies of the city of Maplewood police department, on the grounds of relevancy. Appellants assert that the policies were relevant to prove an essential element of a § 1983 prima facie case against a municipality, to prove the conspiracy claims, and to impeach the officers' credibility. These arguments are without merit.

■ This court reviews a trial court's refusal to admit exhibits for a clear abuse of discretion. *Maddox v. Patterson,* 905 F.2d 1178, 1179 (8th Cir.1990). Appellants first assert that the exhibits should have been admitted because appellees did not object in writing within five days of the trial as required by the pretrial order. As appellees point out, however, the pretrial order states that "[a]ny objections not made in writing at least five (5) days prior to trial *may* be considered waived." Appendix at 72 (emphasis added). Therefore, the trial court retained discretion to entertain objections and exclude the exhibits.

■ The exhibits are not relevant to prove an essential element of the § 1983 claim against the City of Maplewood. In order to make out a § 1983 case against a municipality, a plaintiff must show that a municipal policy or custom, either official or unofficial, was the moving force behind a constitutional violation. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). In this case, appellants do not assert that the policies sought to be admitted were the moving force behind a constitutional violation. Rather, it appears that they are contending that the police officers did not follow official policies during the incident. The admission of these unchallenged policies would not have aided appellants in proving their § 1983 claim against the City of Maplewood.

■ Moreover, the exhibits were not relevant to proving the conspiracy claims. The appellants assert that the officers' failure to follow official policy is evidence of a conspiratorial cover-up. After a careful review of the policies and the alleged violations, we fail to see how the policies are evidence of any conspiracy. Finally, any impact that failure to follow these policies would have had on the officers' credibility would have been minimal. Accordingly, the trial court did not abuse its discretion by excluding these exhibits.

### IV.

Appellants next maintain that the district court improperly granted appellees' motion for judgment as a matter of law after the close of appellants' case as to the constitutional and Missouri common law claims of conspiracy. We disagree.

The granting of judgment as a matter of law is reviewed *de novo* using the same standard as the district court. *Abbott v. City of Crocker*, 30 F.3d 994, 997 (8th Cir.1994). Judgment as a matter of law is proper when the nonmoving party has presented insufficient evidence to support a jury verdict in his favor viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences without assessing credibility. *Id.*

Viewing the evidence in the light most favorable to appellants, no reasonable juror could find that a constitutional conspiracy existed. In order to show a constitutional conspiracy, a party must show that two or more individuals conspired for the purpose of depriving, either directly or indirectly, a person or persons of their right to equal protection of the laws or of equal privileges and immunities under the laws and that an act was done in furtherance of the conspiracy that caused an injury or deprivation to another. *Employees Betterment Ass'n v. Omaha*, 883 F.2d 650, 652 (8th Cir.1989) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971)).

In the instant case, appellants did not show that there was an agreement between two persons to violate anyone's constitutional rights. "[T]he [appellants] must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Employees Betterment Ass'n*, 883 F.2d at 652. This showing can be accomplished by pointing to facts suggesting that the appellees reached an understanding to violate appellants' civil rights. *Id.* The appellants in this case failed to prove any particular facts showing such an agreement. Likewise, the lack of showing an agreement would prohibit a reasonable jury from finding for the appellants on the state law conspiracy claim as well. Accordingly, the trial court properly granted appellees' motion for judgment as a matter of law on the constitutional and common law conspiracy claims.

## V.

Finally, appellants assert that the district court erred in granting judgment as a matter of law to appellees on the Fourth Amendment unreasonable seizure claims after the close of appellants' case-in-chief. Appellants argue that the trial court erred in granting judgment as a matter of law because the court did not make the critical finding of *when* appellants were seized and the court failed to follow the objective reasonableness test articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). These arguments must fail.

Appellants assert that the trial court did not determine when the seizure was made. This argument is wholly without merit because the trial court ruled as follows: "There's no question the man was seized. Certainly when he was put in handcuffs then the question is what happened in between, but even if the seizure occurred the minute Officer Griffin's car stopped, there is not sufficient evidence that any reasonable jury could find in favor of the Plaintiffs...." Transcript, Volume II, at 263. Therefore, the trial court accepted appellants' argument as to when the seizure occurred and, nevertheless, still found the seizure to be reasonable.

Appellants assert that the seizure was not reasonable because Officer Griffin did not have the necessary objective facts to justify the seizure and that the district court incorrectly applied a subjective test in ruling on the reasonableness of the seizure. A brief investigative stop is justified when there is reasonable suspicion of criminal activity. *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995). "[T]he police must point to particular facts and inferences rationally drawn from those facts that, when viewed under the totality of the circumstances and in light of the officer's experience, create a reasonable suspicion of criminal activity." *United States v. Weaver*, 966 F.2d 391, 394 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 829, 121 L.Ed.2d 699 (1992).

There were objective, articulable facts creating a reasonable suspicion of criminal activ-

ity in this case. The appellants were stopped because they and their vehicles matched the description of suspects who had moments before caused a drunken disturbance at Quik Trip and who appeared to be driving recklessly when they left the store. Therefore, the officers clearly had the reasonable suspicion necessary to justify a brief investigative stop.

Moreover, there is no indication that the trial court used an incorrect subjective test. The Court stated, "... there is not sufficient evidence that any reasonable jury could find in favor of the plaintiffs on whether the,—he had the *reasonable, articulable suspicion that a crime,—criminal activity was afoot,* required to justify that kind of limited investigative stop. As a matter of law, police officers are allowed to stop and question individuals when they have suspicion of criminal activity...." Transcript, Volume II, at 263 (emphasis added). To the contrary, it appears that the Court applied the correct test in ruling on the motion. Therefore, the trial court properly granted judgment as a matter of law on the unreasonable seizure claims.

Accordingly, we affirm the district court's exclusion of witness Amy Geisler, the exclusion of appellants' exhibits, and the granting of appellees' motions for judgment as a matter of law on the constitutional and Missouri common-law conspiracy claims and the Fourth Amendment unreasonable seizure claims.

LAY, Senior Circuit Judge, concurring.

I concur in the panel opinion. I wish to add, however, that I feel the district court should have allowed the rebuttal testimony of witness Amy Geisler. Plaintiffs' attorneys were in good faith. They learned of this witness for the first time during the trial and immediately informed the state's attorney of her name. They had no way of knowing her name at the time that the pretrial list of witnesses was filed. There is no claim here that they did not act diligently.

Although our rules place broad discretion in the district courts to allow or disallow a witness not named in the pretrial list of witnesses, it seems to me that the district courts should apply this rule rather liberally and if there is a justifiable reason for the failure of the counsel to disclose the name of the witness, then, barring proof of extreme prejudice, the witness should be allowed to testify. Although there are valid reasons for procedural requirements, we should never enforce these requirements in a manner that detracts from the ultimate proof of all of the relevant facts and circumstances of the case. There is no prejudice here to the defendant's counsel. Counsel had been apprised of the name of the witness at the time of the voir dire of Officer Tisius. The officer in his voir dire denied making the statements but such denial should normally be an issue of credibility for the jury and I believe that this should have happened here.

However, I join in the court's opinion on the basis that I do not feel that the absence of such testimony was prejudicial to the plaintiffs' case. This is not to say impeaching testimony cannot be material and sometimes highly relevant in weighing the credibility of the various parties. *See, e.g., Kyles v. Whitley,* —— U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). However, in this case I deem the evidence so overwhelmingly in favor of the defendant police officers that I do not feel the impeachment testimony would have in all likelihood changed the result of the trial. The standard for a new trial requires the plaintiff to show the trial court's error was substantial enough to deny them a fair trial, *cf. Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.,* 466 F.2d 179, 187 (8th Cir.1972) (en banc) (stating the applicable standard for a new trial is whether a miscarriage of justice would otherwise result), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973); *see also, Wilson v. Groaning,* 25 F.3d 581, 584 (7th Cir.1994); *Morgan v. Woessner,* 997 F.2d 1244, 1261 (9th Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994), and I do not feel that the plaintiffs have demonstrated that standard here.